Good morning, ladies and gentlemen. Our first case for argument is Caesars Entertainment's, Mr. O'Quinn. Thank you, Judge Posner. May it please the Court. The Bankruptcy Court's same-acts approach to Section 105A fundamentally misreads this formalistic approach based on artificial, factual distinction. Well, before you get into Caesars, why don't you tell us, in words of one syllable, what's involved here? What is the importance of getting the relief sought and the enjoining of the state court actions? Certainly, Judge Posner, and it's both state court actions and actions pending in the Southern District of New York. The debtors, in this case, Caesars Entertainment Operating Company and a number of other debtors, principally have two assets around which they hope to reorganize. One is their ongoing business. The other are claims against CEC arising from alleged fraudulent conveyances, CEC being the parent company of the debtors. The guarantee actions have been brought in Delaware and in the Southern District of New York against CEC, seeking essentially to collect on about $12 billion of guarantee claims, whereas the market capitalization of CEC is about $3 billion. The value that is potentially available in an agreement that would facilitate restructuring would be between $1.5 and $2 billion from CEC to the debtors. If the guarantee actions go forward and the judgment is entered, CEC has indicated that it would enter into bankruptcy, that would make it impossible for CEC to make the kind of contribution to the debtors' estates in settlement of the debtors' claims against CEC, and it would also, as a practical matter, severely disrupt the bankruptcy. You'd have a situation where debtors would potentially have claims for equitable return of the assets, as our expert described it in the bankruptcy court, you'd end up with one of the great interrelated messes of our time. So, the injunctions that are being sought are to temporarily enjoin the actions... Temporarily for how long? So there is a court-appointed examiner that is looking at the very disputed transactions that give rise to the debtors' claims against CEC and also the guarantee plaintiffs' claims against CEC. The temporary injunction would run through 60 days after the examiner issues his report. Yeah, well when is that going to be? So the report, as my understanding, is anticipated to be issued sometime in January, and so you would have an injunction that would run from now until presumably sometime in March, assuming that's when the examiner... It was originally due December 15th. That's exactly what the examiner had previously represented, that he had hoped to have it by December 15th. The latest information that I have is that it's more likely to be sometime in January. This is the independent examiner appointed by the court, the debtors are certainly working with the examiner... So this examiner and the examiners, what's his relationship to the bankruptcy judge? The examiner was appointed by the bankruptcy judge, and the examiners... Because the examiner reports in January, and then what happens? So one of the questions and some of the allegations that the guarantee plaintiffs and others have made is whether or not the settlement of the debtors' claims against CEC that's been discussed, been proposed, is a sweetheart deal or not. And the examiner is examining all of the transactions, and is going to issue a report on what the claims are that the debtors potentially have, and would result hopefully in a valuation that could form a consensus restructuring here, where the debtors and all of the stakeholders could hopefully reach some kind of consensus. And the purpose of having the injunction is to provide a cooling off period, to get the discussion in the bankruptcy court... So the examiner reports, what's next after the examiner's report? So after the examiner issues his report, the parties would be negotiating a potential plan of reorganization, and... What's the bankruptcy judge doing? I'm sorry, I'm not sure I follow Judge Poston. What is the bankruptcy judge doing? There have been a number of different... Is the examiner reporting to the bankruptcy judge, or what? No, the examiner hasn't yet reported to the bankruptcy judge. No, not hasn't yet, but in January, is that what he's going to do, he's going to report to the bankruptcy judge? It'll be a report to the bankruptcy judge, it'll be a report to all of the parties as well, so that the parties will have an assessment of the examiner's evaluation of the claims. You say that the injunction against these state court actions and the federal district court actions, sorry, will be able to resume 60 days after the examiner's report. That's correct, Judge Poston. What's the bankruptcy judge doing in this period? During that period, the parties will be, and are, they're not just waiting on the report, but the parties are engaged in... What's the bankruptcy judge doing? I'm not sure I follow the question. We have a bankruptcy judge, don't you? We absolutely do, Your Honor. So is the examiner reporting to him, or reporting to everybody, or what? The examiner would be reporting to him, and that would be a report that would be available to the public. Okay, now what does he do? I don't think... That's the report, now what does he do? I don't think there's a particular action that's contemplated by the bankruptcy judge upon receipt of the report. The purpose of the report is to facilitate a consensual reorganization, so that... Yeah, but the bankruptcy judge has to approve that. That's right, Your Honor, but we're not talking about... How long is that going to take? Well, that's... I don't get the 60 days. You don't want these state court and the federal district court decision somehow disrupting the bankruptcy, and yet 60 days after the examiner, these suits resume, but meanwhile, the bankruptcy hasn't been resolved. Well, it may not have been resolved, Judge Posner. I mean, again, the idea is to... So then what, are you going to ask for another injunction against the state court suits? Well, I think it would depend on what the circumstances were in the time that follows after the examiner issues his report, and what the prospects of a consensual reorganization look like at that point in time. I think the idea is that, yes, during that period of time, the parties will have the independent views of the examiner, be able to take that into account in their own negotiating positions, hopefully facilitate a consensual reorganization, propose a plan of reorganization. I don't know whether that could conceivably be... But meanwhile, these suits will resume. At some point, Your Honor, yes, these suits would resume unless there was a request to extend the injunction. But the purpose was not to have the suits resume until the bankruptcy was resolved. No, Judge Posner, the request wasn't to enjoin these suits for the duration of the bankruptcy. I think that's something that a bankruptcy court could potentially do, and certainly would have the authority to do, and neither Fishner nor Technik are to the contrary on that. Well, what's the magic of the 60 days after the examiner's report? Well, I don't know that there's a particular magic to 60 days, Judge Posner. I think that the judgment was that that should provide a sufficient period of time in which the parties, having received the independent report of the examiner, would be able to assess whether they will be able to achieve a consensual restructuring in bankruptcy or not. And I think that was the thought behind the 60 days. If, of course, the end of the 60 days were to be approaching, and it looked like there was the potential for a consensual reorganization, but the parties weren't there yet, yes, I think it's something that the parties and the bankruptcy court could revisit, whether an extension of that injunction should continue. We never got to any of these discussions, of course, because the bankruptcy court found that it, as a matter of law, didn't have authority, essentially, to even entertain the injunction being requested, because it came up with a bright-line rule, not supported by this court's third-party litigation, can only be issued when the debtor's potential claims against the third party arise from the very same acts as the third-party plaintiff's claims against the third party. And that's, of course, the focus of what was our appeal to the district court and our appeal to this court, is whether the bankruptcy court was simply wrong as a matter of law. The related acts is what you're focused on, is that correct? That's exactly right, Judge Mannion. I mean, at the end of the day, the fundamental test, the way that this court described it in Zoran Bernal, the way it's been described in other cases as well, is to ask, is the third-party litigation sufficiently related to the bankruptcy? And courts have assessed that by assessing, would the third-party litigation potentially affect the integrity of the bankruptcy estate? And in the Fisher decision, this court said that there are a couple ways to assess that. Does it affect the amount of property in the bankrupt estate, or does it affect the allocation of property among creditors? And this is a case that involves both, Your Honor. And the reason for that is because the guarantee plaintiffs here are themselves creditors of the debtors, and pursuing the guarantees, which were really guarantees of convenience. At the time that the guarantees were entered into, CEC didn't have substantial independent assets. What happened, and so they understood that if they collected on the guarantee, what they would have been collecting was equity of the debtors. Now the debtors allege that CEC has improperly transferred assets from the debtors to CEC. Those are the very assets from which the guarantee plaintiffs would be trying to collect, and then the very assets that CEC has claims against the, excuse me, the very assets on which the debtors have claims against CEC for recovery. Is it better to have the decisions by the state courts, and maybe the federal court in New York, before an effort is made to wind up the bankruptcy? Well, Judge Posner, the testimony at trial and the representations made by CEC in its public filings is that if it's adjudicated to be liable for the guarantee claims, it's going to enter into bankruptcy. And if it does, it's not then in a position to be able to make a contribution to the debtors' estates in settlement of the debtors' claims, and the type of consensual reorganization that is hoped for here simply won't be able to be achieved. And so that is why it threatens the integrity of the bankruptcy estate. No one's talking about extinguishing their claims for all time. The point of this is a temporary injunction of, or a temporary stay of the ongoing litigation, but it's to prevent the harm to the debtors, namely that one of the principal assets around which they are hoping to reorganize will essentially not be available to them, because CEC itself would be in bankruptcy. Well, CEC, because it's not a party, and somehow or other, I don't know how it extracted the, we call them the good Caesars? Well, that's the way that I think that the plaintiffs have- That seems to be the big issue, is that CEC took out the good Caesars, which I think somebody calls them, and then left the other ones that aren't very good, and that's where the problem with the all parties, is they're worried about getting those back into the mix, I presume. I think that's right, Judge Mannion, and here's the key point. If the assets that the debtors allege were fraudulently transferred from them to CEC, if they were with the debtors, then the guarantee plaintiffs would be second and lower tier creditors to try to recover in a bankruptcy, but instead, they're doing an end run around the bankruptcy process, essentially trying to jump the line, because they're trying to recover from the guarantor, CEC, from the very assets that the debtors allege were fraudulently transferred to them. Well, what's wrong with that? What's wrong with that, Judge Posner, is that if you have, number one, if those assets had not been fraudulently, allegedly fraudulently transferred to CEC, then those assets would be with the debtor, and the absolute priority scheme would apply. Wouldn't there be issues in these state court trials? Well, there are issues related to that, Judge Posner, and here's, I think- How does the litigation wound up before an effort is made to determine how many of CEC's assets and the subsidiary's assets there are, and how they should be distributed? Well, Judge Posner, I mean, is this court held in Zonix, 813 F2nd at 131, adjusting competing claims is a central function of bankruptcy, and we agree that, yes, there's going to be negotiation and give and take, and the bankruptcy process should be allowed to run its course, and the point is, the very things that the Southern District of New York is in the process of examining are the kinds of things that should be examined in the context of a bankruptcy proceeding, and so, for example- What is the effect of a discharge on the guarantee claims pending in Delaware Chancery Court and SDNY? So if I'm following your question correctly, if those claims are adjudicated and CEC is found to be- No. The other way around. Oh, I see. If those claims are enjoined- Oh, I see. So- And there's a discharge in the bankruptcy case, can those claims go forward or are they effectively extinguished? So the question would be whether or not they could or should be discharged in the bankruptcy proceeding, and respectfully, Judge Sykes, that's a discussion and debate that should happen in the bankruptcy proceeding, as opposed to in some other litigation, and if there's a decision that the guarantee plaintiffs don't like in the bankruptcy, they can appeal that all the way up to this court, but the key point is, that's where this should be happening, as opposed to the Southern District of New York, where the district court has indicated she's going to look at all of the transactions, not just the B7, not just the senior unsecured notes transactions, but all of the transactions, and assess from the overall course of conduct whether or not the debtors were engaged in an out-of-court restructuring. If this case isn't sufficiently related to the bankruptcy, so that a bankruptcy court has the authority to enter an injunction, it's really hard to imagine any case in which a bankruptcy court would have that authority beyond the facts of Fisher itself, and that's inconsistent with the holding of Fisher, where this court made clear that that was a case, not at the outer limits of a bankruptcy court's power, but at the heartland of a bankruptcy court's power, because this court explained, if you changed one fact, you wouldn't be involved in 105. Are you saying, will the rulings by the bankruptcy judge be preclusive in these, I mean, will they be preclusive in these state court suits? Well, I'm not sure, I don't know that they would be preclusive in the state court suits, and I don't think that what the Southern District is examining would be preclusive as to the debtors in its claims against CEC, but it's very troubling that you have that court examining essentially what the relationship was, and what were the nature of the transactions that were being introduced by the debtors. Well, that makes it sound as if you think the bankruptcy proceeding would be preclusive, and it would extinguish that. I'm not saying that it necessarily would be, Judge Posner, I mean, the guarantee plaintiffs... I don't see how these two sets of cases fit together. Well, I don't see how they could possibly be any closer related, and not actually be property of the estate, and let's just look at the facts that show how they're related. The guarantee plaintiffs are creditors of the debtors. They're seeking to recover... It's so confusing. You say all you want is an injunction for 60 days against these suits, but then you say the suits are going to vanish, because the bankruptcy court is going to resolve everything. I didn't say that, Judge Posner. What's going to be left for these suits? So, Judge Posner, I didn't say that the suits were going to... What is going to be left for these suits? Well, that will depend on what the bank... Yeah, so you have the notion that the bankruptcy can actually extinguish all these lawsuits. Is it possible that you could have a confirmed plan of reorganization that would have effects on their ability to pursue these claims? You don't mean have effect, you mean would extinguish them. Is that something that's potentially possible? Yes, it is, Judge Posner. Is that currently before the bankruptcy court? No, it's not. It's part of the chess board. That's a fair way to assess it. But in terms of the relatedness, they're seeking to recover from the very assets that the debtors assert were fraudulently transferred to CEC. Their claims arise from transactions. And an alternative would be, let these lawsuits go forward to judgment, but not permit the winner of these cases to get his money and say, here's a claim. And then that would be, would see, and then the bankruptcy court would determine how much of that claim should be allowed. Well, a couple of... I mean, you think you'd like to have all the litigation resolved, since it's all intermingled, before deciding who gets what in the way of the assets of the bankrupts. So Judge Posner, a couple of points. First, you're talking about sort of the end game, as opposed to the question that is actually presented here, which is a very simple one, which is, did the bankruptcy court have authority to enter an injunction? And that was the basis for the bankruptcy court denying the injunction. It concluded as a matter of law, it lacked authority. And that would be true under its rationale, whether you're talking about the case going forward, or execution on the judgment. So even if you were to conclude that perhaps the most sensible thing to do here would be to allow these things to go forward, but perhaps you could enter an injunction to stop execution. Right now, the bankruptcy court's holding says, I couldn't even enjoin to stop the execution because I don't have authority, because they don't arise out of the same acts. So either way, you're going to have to address this threshold issue, which is sort of the key issue. And then, as I said at the outset, the danger to the debtors is that if these claims go forward and result in a judgment, whether or not there's an attempt to execute on it, that's going to drive the parent into bankruptcy. And that is going to make the assets, the very assets that the debtors allege were fraudulently transferred from them, unavailable to the debtors, at least in any type of consensual way as hoped for under the RSA. So there's questions of authority and propriety that are antecedent to the questions of timing, when an injunction might be most appropriate. Well, there are questions, Judge Sykes, as to authority that are antecedent to the bankruptcy court's ability to enter any injunction, whether it was an injunction now, whether it was an injunction later, whether it was an injunction that ran for 60 days, whether it was an injunction that ran through the course of the bankruptcy proceeding itself. That's absolutely right. So as you, I guess your position is that the bankruptcy court erred in saying it was the same acts as opposed to recognizing the case against CEC by the, I guess they're the lenders, right? So, Judge Mannion... And by saying related to, then he could, the bankruptcy court could enjoin that case as well. That's what you want. Yes, Judge Mannion. And whatever this report that's supposed to come out, we don't know, you don't know, and it's going to say, yeah, he really didn't have the authority what to extract the good seizures away from the body of the other assets? So I think there are two things that are rolled into that, Judge Mannion. First, yes, the error by the bankruptcy court was in concluding it didn't have authority to enjoin the litigation against, by the guarantee plaintiffs against CEC because it said that in order to be able to enjoin third party litigation, it's got to arise from the same acts as the debtor's own claim. That doesn't make sense on its own terms because there are lots of cases in which injunctions are issued in which there are no claims whatsoever against the third party. And then with respect to the examiner's report, the examiner is going to be assessing what are the claims that the debtors have against CEC, whether or not some of the transfers from the debtors to CEC were improper. And hopefully by having an independent court-accorded examiner assess those claims and the value of those claims, then all of the relevant stakeholders here can sit down and agree to a consensual reorganization without having a domicilious sort of- Well, certainly if the guarantee plaintiffs' claims don't result in a judgment against CEC, then it's hard to see a scenario in which CEC would need to enter into bankruptcy. Okay, well, thank you, Mr. O'Quinn, and we'll hear from Mr. Johnson. Thank you, Judge Posner. Good morning, and may it please the Court, Jim Johnston for Wilmington Savings Fund, the plaintiff in the Delaware action, counsel for the other plaintiffs in the Southern District of New York. New York actions are here today and available to answer questions if needed. Let me tackle Judge Posner's question and Judge Sykes' question first. To cut to the heart of it, if the debtors get their way, there will be nothing left of the guarantee suit. What the debtors want to do is protect CEC, which is their corporate parent, the entity that directs their actions, by imposing an injunction and then confirming a plan, which they've already proposed, that would contain a release of all of CEC's liability to my clients as well as to the bankruptcy estate. With respect to the examiner's report and when it will be filed, the answer is we don't know. The latest word on the record from the examiner is in a statement filed in November where the examiner said, given the delays in document production to him, the volume of documents already produced, repeated requests of parties to reschedule interviews to later dates, the final report will not be filed on or before December 15th. So all that we know is it won't be filed on or before December 15th. What happens- Did you say December or January? December 15th. December. Yes. Now, what happens after the examiner report is filed? Well, the debtors file a plan or a new plan. Judge Posner, as you indicated, the plan process takes a long time. You have to propose a disclosure statement, get it approved by the court, send it out for voting, and then have a confirmation trial. And then have a what? What was the last part? A confirmation trial, a confirmation of the plan itself. That process in a big case like this typically takes six months. It would be lightning quick for it to take four months. So the idea that this is just going to be a 60-day cooling off period is an illusion. What the debtors will do if they were able to get an injunction would be to come back and say, Judge, we need more time. Why do we need more time? We need more time to confirm our plan, the effect of which would be to wipe out my client's claims once and for all. In the meantime, there's trial schedule. There's a trial schedule in March and two trials scheduled in May on the guarantee claims. This temporary injunction would completely derail those cases. Who knows when we'd get another trial schedule? It would be severe prejudice to the Appellees in this case. Right, but the bankruptcy court didn't even conduct any kind of weighing of the competing interests here, which is ordinarily the kind of analysis we would expect to see in a domain like this where flexibility is key, right, in fashioning a remedy and determining whether it's appropriate, determining its timing, determining its scope. And I mean, this request didn't even get out of the gates because the judge thought that our cases imposed this rigid same-acts requirement before the court can even entertain the possibility of weighing factors that would ordinarily go into the equation about whether to issue a 105 injunction. Judge Goldgaard did not engage in that balancing analysis. I think he did use the starting gate analogy. He did sit through a two-day trial, so the evidence was before him. But I submit that the analysis that he went through is not rigid, and it is the correct interpretation of the law. What he held is that the debtor's alleged desire to have first priority on their parents' assets is not a legitimate basis for enjoining the guarantee cases. So he didn't have to engage in the balancing analysis. And that's true even if you assume that the debtors truly are trying to maximize the bankruptcy estates and not just acting on the inherent conflict of interest arising from CEC's control over them. Under technic, which we all read a lot about, a bankruptcy court's not free to issue an injunction whenever a debtor says it wants to sue somebody who's also being sued by a third party's assets. But that's the only harm you heard discussed this morning, this competition for CEC's assets. The bankruptcy code just doesn't have a debtor-goes-first priority, even in cases where there may be common facts and the defendant can't pay everybody. If that was all that was needed for an injunction, technic would have come out the other way. In technic, you had the same defendants, the same pool of money, and an effort by those assets from both the defendant and an affiliate. But that wasn't enough because there were different injuries. There were injuries to the debtor and then injuries to the third party creditor. Because the creditor was just pursuing harm to the affiliate, its lawsuit wasn't closely related enough to the bankruptcy case to justify an injunction. If the bankruptcy court were to determine that it was related to, but would still not enjoin, is that a possibility too? Yes, the related to language is a jurisdictional standard, your honor. So once he decides, okay, yeah, it's related, but then not going to go along with the injunction, restraining, whatever you call it. Yes, there was not a dispute over the bankruptcy court's jurisdiction to hear the injunction motion. But what the bankruptcy court held and what the district court held, applying technic and applying Fisher, was that that jurisdiction isn't enough. The mere relatedness of the case isn't enough to then say, I have authority to enjoin these third party actions. So even if he didn't say, well, it's got to be same acts, and said, yeah, it's related to as well, but it doesn't measure up to where I would enjoin anybody, is that what you're saying? Yes. And Judge Gettleman hit on that in his opinion, affirming Judge Goldgaard, where he said, whether there's a strict same acts requirement that's a bright line rule, or whether it's just a factor to be considered, it's certainly a very, very important factor. And the lack of the connection or similarity of the claims asserted by the debtors and the claims asserted by the guarantee plaintiffs was just overwhelming here. So there was no connectedness that would justify an injunction. Why is it such an important factor? That's a really good question. It's because the role of a trustee in bankruptcy, or a debtor in possession in bankruptcy, or is to marshal assets of the debtor for the distribution to all creditors. Where you have that, and where you have a plaintiff who's jeopardizing that role by asserting claims for harm to the debtor, it can fairly be said that those claims should be pursued in the bankruptcy by the debtor for the benefit of all. But that's not what we have here. What we have here are guarantee cases where my clients and the others are suing to enforce their individual contract rights for harms that are imposed on them. Our claims don't have anything to do with harms to the debtor. The debtors couldn't assert our claims, and we couldn't assert their claims. Right, but they're going after the same pool of money, and the holding company is the only source of, or at least the major source of funding for the reorganization plan, right? It's fair to say we are going after largely the same pool of money. What the cases teach us is that that's not sufficient. And this is not a third-party insurer, third-party guarantor kind of situation, independent, completely unrelated third-party. These are related claims. Well, right. And related parties. It's a guarantor, for sure. This is a guarantee of billions of dollars in debt. Right, but not an unrelated guarantor where they've got assets separate and apart from which to satisfy the judgment, if any, in other suits. Right, but the cases teach us that that is just not enough. The fact that you may have an insolvent defendant who may be sued by the debtor and who's being sued by the third party doesn't warrant an injunction. In Technic, the court held that basically the rule of requiring some similarity, same acts of misconduct to the debtor, quote, ensures that the trustee will be able to fulfill the purpose of bankruptcy laws without allowing the bankruptcy jurisdiction to swallow claims only tangentially related to the debtor. And that's really what's going on here. Our claims are premised on CEC's independent liability, separate from any misconduct to the debtor. So, Judge Goldgar's ability to do his job just isn't threatened. If we were asserting claim for harm to the debtor, like my clients were before the bankruptcy case was filed, we asserted some derivative claims, we asserted other claims against CEC based on breach of fiduciary duty and the like. Those were claims based on harm to the debtor. Once the bankruptcy case was filed, they were stayed. They're no longer being pursued in Delaware. They hopefully will be pursued in the bankruptcy case. I'll turn briefly to a few issues that I think were something of a sideshow in the briefs. The debtors, notwithstanding the fact that we're suing on contractual guarantees, tried to muddy the waters by saying, well, the guaranteed plaintiffs are asserting claims under the Trust Indenture Act. And the Trust Indenture Act might involve some determinations that involve the debtor's conduct. But at core, those TIA claims are still for enforcement of our guarantees. They're not related to any CEC misconduct to the debtors, which again, the types of claims that properly would be pursued on behalf of the estate. Our claims aren't based on any of the same acts. The only overlap that the debtors identified in the brief is that the trial court might determine that the guarantee stripping transactions were part of a larger out-of-court restructuring. That's one of the elements of the TIA claim. But that's not a claim that the debtors could assert. At worst, the debtors fear that the trial court might make some factual finding about their pre-petition conduct. But the answer to that is, so what? Findings in unrelated litigation aren't a basis for an injunction. There's no case that says that. We also heard this morning that, well, an injunction is needed here because all of CEC's assets came from the debtors originally. That's not completely true. But again, even if it was, so what? That's not a basis for an injunction. Claims with the same source of recovery, as I mentioned earlier, aren't the same as claims based on the same acts of misconduct to the debtor. The looting of the debtors and the creation of the good CECs and the bad CECs are irrelevant to our guarantee claims. Well, there's certainly a huge difference in value. Yes, yes. And we are hopeful that the debtors actually assert the claims against their corporate parent and prevail. But none of that is relevant in any way to the enforcement of our guarantees. Well, is there a way that if you say, assert their rights against their parent, I guess it is, who is the guarantor? And will those assets, you think those assets would still be frozen in order for them to compete for those assets? I believe that the likely outcome, and the debtors have said this in their brief, and they mentioned this earlier, is that if we were to prevail in achieving a judgment against CEC on the guarantees, CEC will file for bankruptcy, where frankly it should be right now. If CEC files for bankruptcy, we then cannot enforce our guarantee claims. We become creditors in the bankruptcy. We wait in line with everybody else, and the bankruptcy court sorts it out. Well, how does that... We will be before a bankruptcy court anyway then, the way you look at it in the future. If the debtors are true to their word, yes, we will be before the bankruptcy court in the future. Well, how does that scenario not gravely imperil the bankruptcy of the operating company, the present bankruptcy? It doesn't imperil the present bankruptcy at all. There's no harm. The restructuring depends on the solvency of the parent, does it not? No, that's absolutely not true. If CEC filed... CEC is insolvent, whether they file for bankruptcy or not. The only question here is whether their liability to us is determined. So if CEC files for bankruptcy... The amount of money that's available to restructure... Will be identical. Depends on staying the SDNY and Chancery court suits. No, Your Honor. It doesn't depend in any way on that. If our cases proceed to judgment and then CEC files for bankruptcy, we will have not taken a dollar away from CEC. Those assets are still there, and then the bankruptcy court determines who has priority to them and who they should be distributed to. The debtors are trying to avoid that critical step. They're trying to say, put our cases on hold. Don't determine our liability. We're going to go confirm a plan and we're going to wipe it out once and for all. That's not the way the bankruptcy laws work. I see that my time's up. Any other questions? Thank you very much, Mr. Jones. Thank you. Mr. Quinn, your time has expired, but you can have another minute or so. Thank you, Judge Posner. Judge Sykes, yes, if CEC goes into bankruptcy, its ability to voluntarily contribute over 1.5 billion in value to these debtors in settlement of these debtors' claims will be impaired. They would object to a voluntary contribution if CEC was in bankruptcy, and that would seriously disrail the pending bankruptcy. You also asked, did the bankruptcy court err right out of the gate? It did because it asked the wrong question. It looked at whether or not these things arise from the same acts, a test that never before nor since has been applied by any other court in this circuit or any other circuit court. If this court were to affirm that, it would render this court a national outlier on that issue. The things that you hear the guaranteed plaintiffs complaining about, about what the timing of an injunction should be, whether or not there might be releases of their claims against this bankruptcy process, those are all questions that are fundamentally for the bankruptcy court, and whether or not the issuance of an injunction would have an effect on that is something that the bankruptcy court could and should have considered after it got past the question of whether or not it had authority. Why hasn't CEC declared bankruptcy? Because CEC is not insolvent, Judge Posner. Well, if it's not insolvent, why can't it be sued in the ordinary course? Well, again, this gets back, the question isn't whether or not it can be sued in ordinary course. The question is, does a bankruptcy court have authority to enjoin third party actions? And you look at Enri Lyondell, Enri Gander Partners, all sorts of cases where I don't really understand it. Suppose CEC is not in bankruptcy and and then these cases, the state court cases in the Then that's the end of it. What would that have to do with the bankruptcy of the subsidiary? Well, Judge Posner, if CEC could pay, then this case would be like Technic and there wouldn't be a reason for an injunction. What this court found in Technic was that the third party defendant, there was only one creditor. So all the concerns that my colleague was just talking about, about the duty of the and so forth, didn't apply because there was only one creditor. And second, there was ample assets. You're not answering my question. Well, the answer to your question is it wouldn't have the assets, Judge Posner, because its market capitalization is only $3 billion and their claims are $12 billion. Well, that was what Mr. Johnson addressed. If CEC doesn't have the assets, if it declares bankruptcy, then there will be no immediate execution of the judgments that these plaintiffs, the guaranteed plaintiffs have obtained and it will be sorted out in a separate bankruptcy. Well, but that's, I think that's part of the point, Judge Posner, is that it certainly wouldn't be sorted out just in this bankruptcy and the ability of CEC to make a voluntary contribution in settlement of claims that the debtors have around which the debtors are proposing to reorganize, that ability would be gone. That is the irreparable harm to these debtors. So CEC is broke and it's going to give money to its subsidiary? No, the point, Judge Posner, is that if it is liable for the guarantee plaintiff's claims, then it has represented it would be in bankruptcy and it would not be able to make a voluntary contribution to the debtors. But that's all the end game. She wants CEC to fund the bankruptcy of the subsidiary so that CEC will have no assets to be able to pay these guaranteed plaintiffs who have perfectly good, who may have perfectly good claims against it. Judge Posner, again. Well, that's your, that's the scheme, right? Well, render CEC bankrupt by having it contribute its money to the subsidiary. CEC wouldn't be rendered bankrupt by settling the claims. Well, you just said they were going to be rendered bankrupt. No, Judge Posner. I said they'd be rendered bankrupt if the guaranteed plaintiffs succeed on their claims. But in terms of the claims that the debtors have. I've never heard of a situation in which a firm says, I shouldn't have to defend a suit, it's going to make me bankrupt. Well, Judge Posner, this isn't about CEC. This is about the debtors. And it's about whether or not the bankruptcy court was wrong as a matter of law to find that it didn't have authority. But I think your scheme is to take the assets of CEC and give them to the subsidiary to enable it to have better terms in the bankruptcy. And then CEC is left naked and these lawsuits against it become worthless. So, Judge Posner, a couple of points. First, to the extent that the assets that were allegedly fraudulently taken from the debtors by CEC are returned to the debtors or compensation for them are returned to the debtors, then that puts everything back in the position that it was at the time that the guarantees were entered into. They understood at the time the guarantees were entered into, CEC didn't have substantial independent assets. It was a guarantee of convenience because CEC and CEOC had consolidated financials. So, but at the end of the day, those questions, and this really gets one of the questions that Judge Mannion asked, are ultimately questions for the bankruptcy court in deciding whether or not to issue an injunction and whether or not to potentially confirm a plan of reorganization that would follow later down the road. But the bankruptcy court faltered right out of the gate because it tied its own hands and said, I don't have authority to enter an injunction here because it basically adopted the guaranteed plaintiff's competing litigation rule, a rule that has never been adopted anywhere else. And courts routinely enjoin third party litigation where it will threaten the integrity of the bankruptcy estate. And that's exactly what is at stake in this case. If the court has further questions. Thank you very much, Mr. O'Quinn and Mr. Johnson. Thank you, Judge Posner.